BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: PORK INDIVIDUAL DIRECT PURCHASER ANTITRUST LITIGATION | MDL No. |

**PLAINTIFFS SYSCO CORPORATION'S AND CHENEY BROTHERS, INC.'S BRIEF IN SUPPORT OF THEIR JOINT MOTION FOR TRANSFER OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407 FOR CONSOLIDATED PRE-TRIAL PROCEEDINGS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(a) of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation, Plaintiff Sysco Corporation ("Sysco") and Plaintiff Cheney Brothers, Inc. ("Cheney Bros.") (together, "Movants") respectfully move the Judicial Panel for Multidistrict Litigation for an Order for Transfer of the following case to the United States District Court for the Southern District of Texas to be consolidated with *Sysco Corporation v. Agri Stats, Inc. et al.*, Case No. 4:21-cv-00773 (S.D. Texas) (the "*Sysco* Action") for pretrial proceedings: *Cheney Brothers, Inc. v. Agri Stats, Inc. et al.*, 9:21-cv-80424-DMM (S.D. Fla.) (the "*Cheney Brothers* Action") (the *Sysco* and *Cheney Brothers* Actions together, the "Related Actions").[1]

Alternatively, Movants respectfully request that the Related Actions be transferred pursuant to 28 U.S.C. § 1407 to the District of Minnesota, where they could be coordinated for pretrial proceedings with the individual direct purchaser actions currently part of the case captioned *In re Pork Antitrust Litigation*, Case No. 0:18-cv-01776-JRT-HB) (D. Minn.) before the

---

[1] The following Defendants in the Related Actions are the same: Agri Stats, Inc.; Clemens Food Group, LLC; The Clemens Family Corporation; Hormel Foods Corporation; JBS USA Food Company; Seaboard Foods LLC; Smithfield Foods, Inc.; Triumph Foods, LLC; Tyson Foods, Inc.; Tyson Prepared Foods, Inc.; and Tyson Fresh Meats, Inc.. The *Cheney Brothers* Action filed in the Southern District of Florida also names Hormel Foods, LLC as a Defendant.

1

Honorable John R. Tunheim and U.S. Magistrate Judge Hildy Bowbeer. Movants also respectfully request that any subsequently filed "tag-along" individual Direct Purchaser actions brought in other courts be similarly transferred and consolidated under Rule 6.2 of the Rules of Procedure for the Judicial Panel on Multidistrict Litigation to whichever District Court the Panel transfers and consolidates the Related Actions pursuant to 28 U.S.C. § 1407.

## PROCEDURAL HISTORY

On June 28, 2018, a group of *indirect* purchaser plaintiffs ("IPP") filed a class action complaint in the United States District Court for the District of Minnesota alleging a conspiracy among pork producers and a company called Agri Stats Inc. from 2009 to the present, to limit the supply of pork in order to fix prices in violation of state and/or federal antitrust laws. The case was assigned to Chief Judge John R. Tunheim and Magistrate Hildy Bowbeer. The next day, on June 29, 2018, the first *direct* purchaser plaintiff ("DPP") class action complaint containing substantially similar allegations was filed, also in the District of Minnesota and assigned to Judge Tunheim and Magistrate Judge Bowbeer. In the weeks that followed a number of additional class action complaints were filed—on behalf of both DPPs and IPPs—all in the District of Minnesota. Some of these cases were designated as related cases and originally assigned to Judge Tunheim, and some were not and instead to assigned to other judges in the District of Minnesota.

On August 17, 2018, consolidated amended class action complaints were filed in the various cases pending in the District of Minnesota on behalf of three putative classes of plaintiffs— (i) DPPs, (ii) Consumer IPPs and (iii) Commercial IPPs. On September 7, 2018, all of the cases filed in the District of Minnesota were designated as related cases and reassigned to Judge Tunheim and Magistrate Judge Bowbeer. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 77 ("Reassignment Order").

On September 21, 2018, Magistrate Judge Bowbeer entered an Initial Case Management Order ("CMO") consolidating for pre-trial purposes the cases related under the August 17, 2018 Reassignment Order, and captioned the consolidated cases as *In re Pork Antitrust Litigation*, Case No. 18-cv-1776.  *See id.*, ECF No. 85 ("CMO").  The CMO provided that "The terms of this Order shall apply automatically to actions later instituted in, removed to, or transferred to this Court . . . that involve allegations of antitrust violations concerning pork producers by the Defendant entities in the above-referenced actions."  CMO ¶ 9.  The CMO further provided that "[w]hen an action that relates to the same subject matter as these consolidated actions is hereafter filed in or transferred to this Court and assigned to the undersigned, it shall be consolidated for pretrial purposes with the appropriate group of actions, e.g., Direct Purchaser Plaintiff, Commercial and Institutional Indirect Purchaser Plaintiff, or Consumer Indirect Purchaser Plaintiff Action (provided that any case transferred to this Court solely for pretrial proceedings shall be consolidated only to the extent there is no further order of this Court)."  CMO ¶ 10.

On June 14, 2019, Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC (the "Winn-Dixie Plaintiffs") filed the first *individual* (i.e., non-class action) direct purchaser complaint in the District of Minnesota, under Case No. 19-cv-1578 (JRT/HB), (the "*Winn-Dixie* Action"), containing substantially the same allegations as the complaints in the Class Actions.  On July 9, 2019, Plaintiff Commonwealth of Puerto Rico ("Puerto Rico") filed an individual direct purchaser complaint in the United States District Court for the District of Puerto Rico, containing substantially similar allegations as the complaints in the Class Actions.  On October 17, 2019, Plaintiff Puerto Rico's case was transferred to the District of Minnesota pursuant to 28 U.S.C. § 1404 and assigned Case No. 19-cv-2723 (JRT/HB) (the "*Puerto Rico* Action").

Following the Court's decision in August 2019 on motions to dismiss filed by the defendants, *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 361, the plaintiffs in the various class and individual actions in the District of Minnesota filed amended complaints in early 2020.[2] The defendants filed another round of motions to dismiss, which the Court decided in an opinion issued on October 20, 2020. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 520. In that decision, the Court denied Defendants' motions as to the Direct Purchaser plaintiffs' Section 1 conspiracy claims, while dismissing other claims.[3] The Court also held that the Direct Purchaser plaintiffs in the District of Minnesota cases (including the *Winn-Dixie* and *Puerto Rico* Actions) failed to adequately plead fraudulent concealment, which effectively bars their claims based on conduct occurring more than four years before the filing of the first DPP Class Action complaint on June 29, 2018. *Id.* at 17-22. As a result, the DPP plaintiffs in *In re Pork Antitrust Litigation* cannot recover damages incurred prior to June 28, 2014.

On November 4, 2020, the parties in the District of Minnesota cases, including those in the *Winn-Dixie* and *Puerto Rico* Actions, filed a stipulated Pretrial Scheduling Order, which the Court entered on November 12, 2020. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF

---

[2] Commercial and Institutional Indirect Purchaser Plaintiffs' Third Amended Consolidated Class Action Complaint was filed on January 15, 2020, ECF No. 432 [No. 18-cv-1776 (JRT/HB)]; Direct Purchaser Plaintiffs' Third Amended and Consolidated Class Action Complaint was filed on January 15, 2020, ECF No. 431 [No. 18-cv-1776 (JRT/HB)]; and Consumer Indirect Purchaser Plaintiffs' Second Amended Complaint was filed on November 6, 2019, ECF No. 392 [No. 18-cv-1776 (JRT/HB)]; Plaintiffs in the Winn-Dixie Action filed their Second Amended Complaint on January 15, 2020 [No. 19-cv-1578 (JRT/HB), ECF No. 94]; and Plaintiffs in the Puerto Rico Action filed its Third Amended Complaint on January 22, 2020 [No. 19-cv-02723 (JRT/HB), ECF No. 103]. The allegations in all five operative amended complaints contain substantially similar "allegations of antitrust violations concerning pork producers by the Defendant entities." *See* CMO ¶ 9.

[3] The Court dismissed Defendant Indiana Packers from the case, and also dismissed some of the IPP plaintiffs' state law claims. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 520 at 83-87.

4

No. 532. The Scheduling Order required the parties to begin the meet and confer process on deferred requests for production of documents and structured data, including as to search methodology, and set a deadline of September 1, 2021 for the "substantial completion of document and structured data productions." *Id.* at 2.

Also on November 4, 2020, the DPP Class Action plaintiffs filed a Notice of Settlement with Defendant JBS. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 540. The Court granted preliminary approval of the JBS Settlement on January 13, 2021, and set an "opt-out" deadline of May 28, 2021 for members of the DPP class to exclude themselves from the settlement class, and a Final Fairness Hearing date for July 26, 2021. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 631.

On January 21, 2021, Magistrate Judge Bowbeer entered a stipulation among the DPP Class Action Plaintiffs, Winn-Dixie, Puerto Rico, and the Defendants, consolidating the *Winn-Dixie* Action [No. 19-cv-1578] and the *Puerto Rico* Action [No. 19-cv-02723] with *In re Pork Antitrust Litigation* [Case No. 18-cv-1776] for pretrial and administrative purposes. *In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 644. The Stipulation instructs that the parties in the consolidated actions shall coordinate discovery, but also recognizes that "in addition to whatever coordinated discovery the Parties will engage in across all consolidated cases, the Parties agree and understand that each of the consolidated cases may require discovery that is unique to the circumstances and causes of action at issue therein." *Id.* at 4. The Stipulation also made clear that its entry "does not merge the various pending suits into a single cause or make those who are parties in one suit parties in another, but is done for convenience and economy in administration." *Id.*

Since consolidation of the *Winn-Dixie* and *Puerto Rico* Actions with the other cases in *In re Pork Antitrust Litigation*, additional individual DPP actions have been filed in two different federal districts: *Cheney Brothers, Inc. v. Agri Stats, Inc. et al*, 9:21-cv-80424-DMM (S.D. Fla.) (filed February 26, 2021); *Sysco Foods v. Agri Stats Inc.*, Case No. 4:21-cv-00773 (S.D. Tex.) (filed March 8, 2021). **For reasons discussed further below, Movants expect that numerous additional individual DPP actions will be filed**. Movants request the individual Direct Purchaser actions listed in Schedule A be transferred and consolidated for pretrial proceedings to either (1) the Southern District of Texas, or (2) to the District of Minnesota.

## ARGUMENT

*In re Pork Antitrust Litigation*, Case No. 18-cv-1776, pending in the District of Minnesota consists of antitrust class actions on behalf of three putative classes, including a putative class of Direct Purchaser plaintiffs, as well as two individual Direct Purchaser cases (the *Winn Dixie* and *Puerto Rico* Actions). Recently, two additional individual Direct Purchaser actions have been filed in districts outside the District of Minnesota.

All of the individual Direct Purchaser cases allege a conspiracy to fix, raise, maintain, and stabilize the price of pork among the same group of Defendants in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Defendants implemented and executed their conspiracy by, *inter alia*, coordinating output and limiting production with the intent and expected result of increasing pork prices in the United States. In furtherance of their conspiracy, Defendants exchanged detailed, competitively sensitive, and closely-guarded non-public information about prices, capacity, sales volume, and demand through their co-conspirator, Defendant Agri Stats.

The Related Actions proposed for transfer and consolidation are based on the same or substantially similar operative facts and therefore "involv[e] one or more common questions of

6

fact" as required by 28 U.S.C. § 1407(a). Common questions of fact include: (a) whether Defendants conspired to fix, raise, maintain, or stabilize the price of pork in the United States; (b) whether Defendants conspired to restrict the output and/or limit the production or pork with the intent and expected result of increasing pork prices in the United States; (c) whether Defendants exchanged detailed, competitively sensitive, and closely guarded non-public information about prices, capacity, sales volume, and demand for pork; (d) whether Defendants' conduct caused the prices of pork in the United States to be at artificially high and noncompetitive levels; (e) whether direct purchaser Plaintiffs were injured by Defendants' conduct; and (f) whether Plaintiffs are entitled to, among other things, injunctive relief, and, if so, the nature and extent of such injunctive relief. Transfer of the Related Actions for coordination will prevent duplication of discovery, eliminate the possibility of conflicting pretrial rulings, and conserve judicial resources.

For the reasons discussed below, transfer and consolidation of the Related Actions would be appropriate in either the United States District Court for the Southern District of Texas, Houston Division, or the District of Minnesota in Minneapolis where *In re Pork Antitrust Litigation*, Case No. 18-cv-1776 (JRT/HB) is pending.

**I.      Consolidation and Transfer of the Related Actions Is Appropriate and Necessary.**

The Panel is authorized to consolidate and transfer civil cases pending in different judicial districts (1) when the cases involve common questions of fact, (2) when consolidation and transfer will be for the convenience of the parties and witnesses, and (3) when consolidation and transfer will promote the just and efficient conduct of the litigation. 28 U.S.C. § 1407(a).

**A. Consolidation or Coordination Is Appropriate Because the Related Actions Involve One or More Common Questions of Fact and Law.**

Here, each of the Related Actions is substantively identical—they each allege that Defendants conspired to fix, raise, maintain and/or stabilize prices for pork *over the same time*

7

*period* in violation of the Sherman Act. The Panel consistently holds that cases involving overlapping factual and legal issues are particularly appropriate for transfer. *See, e.g.*, *In re: Payment Card Interchange Fee & Merck Disc. Antitrust Litig.*, No. MDL 1720, 2013 WL 8123000, at *1 (J.P.M.L. 2013) (transferring related antitrust cases under § 1407 because, among other things, the cases "involved common questions of fact"); *In re: Auto. Wire Harness Sys. Antitrust Litig.*, 867 F. Supp. 2d 1349, 1350 (J.P.M.L. 2012) (centralizing related price-fixing actions that involved common questions of fact).

### B. Consolidation or Coordination for Pretrial Proceedings Will Further the Convenience of Parties and Witnesses.

Consolidation or coordination of the Related Actions will serve the convenience of the parties and witnesses. Discovery in all of these actions will involve the substantially similar testimony and documentary evidence from the Defendants. Defendants will likely assert similar discovery objections and privileges in each of the pending actions. Consolidation of these actions will avoid duplicative, redundant, and costly discovery proceedings, and avoid repetitive motion practice and potentially conflicting discovery and other pretrial rulings. *E.g.*, *In re Pharmacy Ben. Managers*, 452 F. Supp. 2d 1352, 1353 (J.P.M.L. 2006) (transferring cases to a single district to avoid duplicative discovery); *In re Amino Acid Lysine Antitrust Litig.*, 910 F. Supp. 696, 698 (J.P.M.L. 1995) (same); *In re Multi-Piece Rim Prod. Liab. Litig.*, 464 F. Supp. 969, 974 (J.P.M.L. 1979) (same).

### C. Consolidation or Coordination for Pretrial Proceedings Will Promote the Just and Efficient Conduct of the Related Actions.

Consolidation or coordination of the Related Actions will promote the just and efficient conduct of the actions. Each Related Action will involve similar pretrial issues. Consolidation or coordination will eliminate the likelihood of duplicative proceedings that might result in inconsistent rulings and will prevent judicial resources from being wasted needlessly. *In re Auto*

*Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1391 (J.P.M.L. 2014) ("Centralization under Section 1407 will eliminate duplicative discovery; prevent inconsistent rulings on pretrial matters; and conserve the resources of the parties, their counsel and the judiciary."); *In re: N Sea Brent Crude Oil Futures Litig.*, 978 F. Supp. 2d 1384, 1385 (J.P.M.L. 2013) ("Centralization will avoid duplicative discovery and eliminate the possibility of inconsistent rulings on Daubert motions and other pretrial matters."); *In re Commercial Money Ctr., Inc. Equip. Lease Litig.*, No. MDL 1490, 2002 WL 31432881, at *1 (J.P.M.L. Oct. 25, 2002) (stating that consolidation of cases filed nationwide would prevent inconsistent rulings).

### D. There Is Sufficient Numerosity to Support Transfer and Consolidation of the Current Individual Direct Purchaser Actions.

The Related Actions currently consist of two individual Direct Purchaser cases pending before judges in two separate districts. The Panel has ordered consolidation and transfer in similar circumstances. *See, e.g.*, *In re Philadelphia Life Ins. Co. Sales Practices Litig.*, 149 F. Supp. 2d 937, 938 (J.P.M.L. 2001) (granting transfer and consolidation of two cases); *In re Amoxicillin Patent & Antitrust Litig.*, 449 F. Supp. 601, 603 (J.P.M.L. 1978) (granting transfer and consolidation of three cases involving complex patent and antitrust issues). Moreover, where, as here, the actions share numerous complex questions of fact, the Panel has consolidated even a relatively small number of actions. For example, in *In re First National Bank, Heavener, Oklahoma (First Mortgage Revenue Bonds) Securities Litigation*, the Panel consolidated two actions that arose from the same factual allegations and shared numerous "complex questions of fact." 451 F. Supp. 995, 1997 (J.P.M.L. 1978). Accordingly, a sufficient number of actions exist to support the transfer and consolidation of the Related Actions.

### E. The Recent Direct Purchaser Class Action Settlement Will Likely Lead to Numerous Additional Individual Direct Purchaser Actions.

Additional individual Direct Purchaser cases will likely be filed given the impending May 28, 2021 deadline to opt out of the recent settlement among the DPP Class Action Plaintiffs and Defendant JBS USA Food Company preliminarily approved by the Court in the District of Minnesota overseeing *In re Pork Antitrust Litigation*. Case No. 18-cv-1776, ECF No. 631 (Jan. 13, 2021). In *In Re Broiler Chicken Antitrust Litigation*, Case No. 1:16-cv-08637 (N.D. Ill.), which involves an alleged conspiracy among chicken producers and Agri Stats, and bears similarities to the conspiracy alleged in the pork cases, settlements among the various defendants and the direct purchaser class action plaintiffs led to the filing of numerous opt-out cases filed by individual DPPs. Thus far, dozens of individual plaintiffs have their own cases in the *Broiler Chicken* litigation. ***It is reasonable to expect that numerous opt-out cases by individual direct pork purchasers will be filed in the coming weeks and months.*** An order from the Panel transferring and consolidating all future individual Direct Purchaser actions with the Related Actions will further the just and efficient administration of justice by obviating any potential transfer motion practice under 28 U.S.C. § 1404 in the courts where those cases are filed, in addition to achieving the usual efficiencies that result from coordinating pre-trial proceedings.

## II. The Related Actions Should Be Transferred to The Southern District of Texas or the District of Minnesota

To determine the appropriate forum for transfer, the Panel considers: (1) where the largest number of cases is pending; (2) where discovery has occurred; (3) where cases have progressed furthest; (4) the site of the occurrence of the common facts; (5) where the cost and inconvenience will be minimized; and (6) the experience, skill, and caseloads of available judges. Federal Judicial Center, Manual for Complex Litigation, § 20.131 (4th ed. 2004).

1. **Where the largest number of cases is pending.** This factor slightly favors the District of Minnesota, where the first two individual DPP cases were filed and have been consolidated for pretrial proceedings with both the DPP and IPP Class Actions in *In re Pork Antitrust Litigation*. That is also the court where the first individual DPP case was filed, and where the DPP (and IPP) Class Actions were originally filed, remain pending, and discovery has recently begun. The Panel has frequently opted to consolidate cases before the court that manages the litigation's first-filed complaint and most actively advances the matters before it. *See, e.g.*, *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, No. 765 1988 U.S. Dist. LEXIS 17039, at *2 (J.P.M.L. Aug. 12, 1988) (stating that transfer to Arizona was appropriate in part because "the first-filed action [was] pending there").

However, given that there are only two individual Direct Purchaser cases pending in the District of Minnesota, the number of cases there does not significantly favor sending the rest the individual Direct Purchaser cases (currently pending in two different districts) there. No district where any of the Related Actions have been filed currently has more than one case. The Southern District of Texas, where Plaintiff/Movant Sysco—one of the largest individual purchasers of pork in the country—is headquartered and filed its individual Direct Purchaser complaint, would also be an appropriate forum.

2. **Where discovery has occurred.** The court overseeing *In re Pork Antitrust Litigation* has ordered that discovery in the consolidated cases, including the two individual DPP cases, be coordinated, and entered a Scheduling Order setting deadlines for initial document and data discovery, including the "commencement of rolling productions" on March 16, 2021. Based on publicly available information, the parties in those cases appear to have been engaged in an extensive meet and confer process about the parties' respective initial requests for documents and

structured data, and have discussed if not resolved issues related to custodians and search methodology (e.g., search terms). Defendants appear to have made some limited document or data productions to date, and the deadline for substantial completion of document and structured data productions is September 21, 2021—in about six months.

While the fact that discovery in the District of Minnesota has started might be a factor in favor of transfer to that court, it is actually a factor militating *against* transfer there. The time period for plaintiffs' claims in the District of Minnesota Direct Purchaser actions is June 28, 2014 forward. *See In re Pork Antitrust Litig.*, Case No. 18-cv-1776 (JRT/HB), ECF No. 520, at 17-22. In contrast, the more recently-filed Related Actions assert different fraudulent concealment allegations, and Plaintiffs/Movants expect the relevant time period for these cases will extend back to 2009—several years longer than for the cases in Minnesota.

In addition, the individual Direct Purchaser actions will not require any class certification-related discovery or motion practice, which will be a focus of the District of Minnesota proceedings. This difference militates in favor of consolidating and coordinating the individual Direct Purchaser cases separately from the class actions now part of *In re Pork Antitrust Litigation*. While some coordination of discovery with the class action cases may be appropriate, the individual DPP cases should not be bogged down by the class certification proceedings in the class action cases—whenever those will occur at some future point to be determined.

3. **Where cases have progressed furthest.** For the same reasons discussed above, the commencement of discovery and "progress" in the Minnesota cases does not necessarily favor sending the Related Actions there. The Related Actions are materially different from the class and individual DPP cases pending in *In re Pork Antitrust Litigation* because they involve a substantially longer damages and discovery period—going back to 2009, as opposed to only 2014.

Because the scope of discovery in the Related Actions will be broader than the class and individual DPP cases pending in Minnesota, transferring and consolidating the Related Actions with the cases in Minnesota would only complicate and perhaps slow down the progress of *In re Pork Antitrust Litigation*.

Similarly, the court hearing the Minnesota cases has already spent considerable time hearing and deciding two rounds of motions to dismiss. By contrast, the Related Actions have only just been filed, and contain different allegations, including as to the Defendants' fraudulent concealment of the alleged conspiracy. Plaintiffs in the Related Actions anticipate Defendants may file motions to dismiss, which will take time to brief and decide (potentially a year or more), potentially further slowing down progress in *In re Pork Antitrust Litigation* if the Panel were to transfer the cases there. Given the differences between the Related Actions and those cases currently part of *In re Pork Antitrust Litigation* in Minnesota, it would be more appropriate to transfer the Related Actions, and any subsequently filed individual Direct Purchaser actions, to the Southern District of Texas where they can start from a clean slate. Alternatively, if the Panel sends the Related Actions to Minnesota, they should be transferred and consolidated in their own MDL proceeding, and not consolidated with *In re Pork Antitrust Litigation* given that litigation's more advanced procedural posture. *Compare In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 437 F. Supp. 3d 1365, 1365 (J.P.M.L. 2020) (granting Section 1407 transfer of actions arising from allegations of price-fixing in the rail-freight industry similar to those in an existing MDL proceeding, but initiating a new MDL proceeding in the same transferee court before a different judge because the "newly-filed actions are in a significantly different procedural posture than" the cases in the existing MDL).

4.      **The site of the occurrence of the common facts.**  No one specific location has yet emerged as the dominant site of common facts.  Agri Stats is located in Indiana, and the producer Defendants are headquartered in a geographically diverse number of states: Arkansas (Tyson), Colorado (JBS), Kansas (Seaboard), Minnesota (Hormel), Missouri (Triumph), Pennsylvania (Clemens), and Virginia (Smithfield).  Because of the parties' geographic diversity, it is unlikely that one district will serve as the locus of common facts or discovery.

5.      **Where the cost and inconvenience will be minimized.**  The Southern District of Texas in Houston and the District of Minnesota in Minneapolis are each a convenient forum for the Defendants, to the extent in-person hearings are required.  Figure 1 below shows the location of the various Defendants.  Houston is a geographically central location served by numerous major U.S. airlines, including United Airlines, which has its largest hub at Houston's George Bush Intercontinental Airport.  Minneapolis, the location of the court overseeing *In re Pork Antitrust Litigation*, is also a geographically convenient location and is served by several major U.S. airlines, including Delta Air Lines, which has a hub there.

**Figure 1 – Location of the Defendants**



14

6.      **The experience, skill, and caseloads of available judges.**  This factor favors neither District, as each district has certain advantages over the other.  On the one hand, the District of Minnesota has fewer total pending cases and fewer pending cases per judgeship than the Southern District of Texas.  As set forth in Table 1 below, for the 12 months ending September 30, 2020, there were 3,108 pending cases in the District of Minnesota and 444 pending cases per judgeship, as compared to 14,636 pending cases in the Southern District of Texas and 770 pending cases per judgeship.  However, the civil cases in the Southern District of Texas move faster than in Minnesota.  In Minnesota, the median time from filing to disposition in civil cases is 14.3 months, and from filing to trial 26.9 months, and there were 501 civil cases (18.5%) over three years old.  By contrast, in the Southern District of Texas, the median time from filing to disposition is only 8.1 months, and from filing to trial 20.3 months, with just 313 civil cases (5.5%) over three years old.  As for MDL experience, the District of Minnesota has 6 MDLs before 5 judges, including one (*In re Fluoroquinolone Products Liability Litigation*, MDL-2642) assigned to Chief Judge Tunheim, who is also overseeing the class actions and individual cases consolidated for pre-trial proceedings in *In re Pork Antitrust Litigation*.  There is currently only one MDL proceeding pending in the Southern District of Texas (*In re BP p.l.c. Securities Litigation*, MDL-2185, pending before Judge Keith P. Ellison), but the district has been the transferee court for a number of significant MDLs.[4]

---

[4] *See In re Merscorp Inc., Real Estate Settlement Procedures Act (RESPA) Litigation*, MDL No. 1810 (Hon. Janis Graham Jack); *In re Enron Corporation Securities, Derivative & ERISA Litigation*, MDL No. 1446 (Hon. Melinda Harmon); *In re Heartland Payment Systems, Inc. Customer Data Security Breach Litigation*, MDL No. 2046 (Hon. Lee H. Rosenthal); *In re Motion Picture Licensing Antitrust Litigation*, MDL No. 366 (Hon. John V. Singleton, Jr.); *In re Refined Petroleum Products Antitrust Litigation*, MDL No. 1886 (Hon. Sim Lake); *In re Service Corporation International Securities Litigation*, MDL No. 1609 (Hon. Lynn N. Hughes); *In re Silica Products Liability Litigation*, MDL No. 1553 (Hon. Janis Graham Jack); *In re Testmasters Trademark Litigation*, MDL No. 1646 (Hon. Vanessa D. Gilmore); *In re VistaPrint Corp.*

Table 1 – Judicial Statistics Comparison: S.D. Texas & D. Minnesota[5]

|  | S.D. Texas | D. Minn. |
|---|---|---|
| Pending Cases | 14,636 | 3,108 |
| Pending Cases Per Judgeship | 770 | 44 |
| Median Time from Filing to Disposition (Civil Cases Only) | 8.1 months | 14.3 months |
| Median Time from Filing to Trial (Civil Cases Only) | 20.3 months | 26.9 months[6] |
| Number (and %) of Civil Cases Over Three Years Old | 313 (5.5%) | 501 (18.5%) |
| Number of MDLs | 1 | 6 |

In light of these statistics, it would be appropriate for the Panel to transfer the Related Actions to either the Southern District of Texas or the District of Minnesota.

## CONCLUSION

For the foregoing reasons and those articulated in their attendant motion, Plaintiffs respectfully request that, pursuant to 28 U.S.C. § 1407, the Panel transfer the *Cheney Brothers* Action to the Southern District of Texas for consolidation with the *Sysco* Action for pretrial proceedings. Alternatively, Plaintiffs request that the Related Actions be transferred to the District of Minnesota. In addition, any tag-along actions, if filed, should also be transferred and consolidated in accordance with the Panel's transfer order.

---

*Marketing and Sales Practice Litigation*, MDL No. 1994 (Hon. Nancy F. Atlas); *In re Waste Management, Inc. Securities Litigation*, MDL No. 1422 (Hon. Melinda Harmon); *In re Wells Fargo Wage and Hour Employment Practices Litigation (No. III)*, MDL No. 2266 (Hon. Gray H. Miller); *In re BP p.l.c. Securities Litigation*, MDL No. 2185 (Hon. Keith Ellison).

[5] Federal Court Management Statistics, U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics (September 30, 2020), *available at* https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

[6] Based on the 12 month period ending September 30, 2019, as data for the 12 months ending September 30, 2020 was not available.

Dated: March 10, 2021

Respectfully submitted,

*/s/ Michael S. Mitchell*
Scott E. Gant
Michael S. Mitchell
BOIES SCHILLER FLEXNER LLP
1401 New York Ave., NW
Washington, DC 20005
Tel: 202-237-2727
Fax: 202-237-6131
sgant@bsfllp.com
mmitchell@bsfllp.com

Colleen Harrison
BOIES SCHILLER FLEXNER LLP
333 Main Street
Armonk, NY 10504
Tel: 914-749-8204
Fax: 914-749-8300
charrison@bsfllp.com

*Counsel for Plaintiff/Movant Sysco Corporation*

*/s/ David B. Esau*
David B. Esau (Florida Bar No. 650331)
Kristin A. Gore (Florida Bar No. 59090)
Garth T. Yearick (Florida Bar No. 96105)
CARLTON FIELDS, P.A.
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida 33401
Tel: (561) 659-7070
Fax: (561) 659-7368
desau@carltonfields.com
kgore@carltonfields.com
gyearick@carltonfields.com

*Counsel for Plaintiff/Movant Cheney Brothers, Inc.*